IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LEONARD LUCKEY,

     Plaintiff,

v.                            CASE NO. 5:14-cv-315-MW-GRJ

OFFICER MAY, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss. ECF No. 47. Plaintiff filed a response to Defendants' motion on January 4, 2016. ECF No. 55.  Defendants' motion, therefore is ripe for review. For the following reasons, it is recommended that the motion to dismiss should be denied with respect to Plaintiff's claims stemming from the assault in February 2014.

## I. Background

Plaintiff, an inmate in the custody of the Florida Department of Corrections at the Santa Rosa Correctional Institution Annex, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges Fourth,

Fifth, Eighth, and Fourteenth Amendment violations stemming from alleged

cruel and unusual punishment, excessive use of force, and deliberate

indifference to medical needs, Fourteenth Amendment due process

violations, and racial discrimination in violation of the Fourth Amendment.

(ECF No. 44 at 15.)[1]

## A.   The Alleged Assaults and Subsequent Threats

In his first amended complaint, Plaintiff alleges that correctional

officers assaulted him on two separate occasions while he was

incarcerated at Northwest Florida Reception Center ("NWFRC"). The first

assault was in January 2014, when Defendants Officer May and Sergeant

Gafford allegedly assaulted Plaintiff while he was serving disciplinary time

for masturbating before a female employee. (*Id.* at 7.) Plaintiff declined to

report this assault because Defendants threatened that they would kill him.

Plaintiff asserts that once he was returned to general population, he

---

[1] Plaintiff's amended complaint names ten Defendants. (ECF No. 44.) His original complaint only named two of the ten Defendants—Sergeant Gafford and Officer May. (ECF No. 1.) Defendant Gafford and Defendant May were served with the original complaint. Plaintiff then filed his amended complaint on August 17, 2015, and Defendants Gafford and May filed their motion to dismiss for failure to exhaust administrative remedies on September 1, 2015. (ECF Nos. 44, 47.) In light of the fact that granting Defendant's motion to dismiss would dispose of the entire case, the Court declined to serve the amended complaint on the remaining eight Defendants until resolution of the pending motion to dismiss.

was targeted and attacked a second time by Defendants May and Gafford

sometime around February 25, 2014.  The second attack took place in the

disciplinary hearing area while Plaintiff was there for a disciplinary report.

Before Plaintiff was permitted to leave, Defendant May struck Plaintiff on

the head, face, and stomach, called Plaintiff a "fuckin nigger," and stated, "I

kill you fuckin nigger, I hate all y'all sons of bitches." (*Id.*)

Then, according to Plaintiff, Defendant Gafford yanked Plaintiff up

and instructed Plaintiff to place his hands on the wall and spread his legs.

Defendant Gafford stated, "this is what happens when a nigger guns one of

our women." He then allegedly kicked Plaintiff in his groin and stomped

into his groin area repeatedly, while Defendant May struck Plaintiff again.

(*Id.*)

After the attack, Defendant Gafford told Plaintiff, "boy I'm the wrong

one. I done already kil[led] one of you bastards and fucked up a whole lot

more, so if ya say anything, yo[ur] ass is ours." (*Id.*) After this attack,

Plaintiff was terrified and feared for his life. (*Id.*)

The next day, Plaintiff declared sick call in an attempt to obtain

medical care for groin pain. (*Id.* at 8.) He told the sick call nurse about the

attack but was too afraid to identify which guards had attacked him. (*Id.*)

Sometime around February 19, 2014, the nurse informed Defendant Captain Shula about the attack. (*Id.*) Plaintiff claims that Defendant Shula had the nurse prevent Plaintiff from receiving treatment other than ibuprofen for pain and swelling. (*Id.*) As a result, Plaintiff experienced bleeding from his penis, testicular swelling, severe discomfort, and intense pain for two weeks. (*Id.*)

Once the pain became too bad to endure, Plaintiff declared a medical emergency. (*Id.*) The prison doctor sent Plaintiff to a hospital in Chipley, Florida. (*Id.*) Plaintiff returned to NWFRC that same day, but was sent to Memorial Hospital in Jacksonville, Florida, the following day. (*Id.*) Plaintiff underwent surgery at Memorial Hospital for removal of his left testicle. (*Id.*)

Upon Plaintiff's return to NWFRC, Plaintiff spoke with Defendant Inspector Copps about the attack, following which, Defendants confronted Plaintiff. (*Id.*) Defendant Gafford told Plaintiff that it was not over and threatened more abuse and violence. (*Id.*) Defendant May threatened that if Plaintiff said anything they would kick his remaining testicle out. (*Id.*)

Plaintiff reported these threats to the officer in charge, which resulted in Plaintiff being placed into protective custody during investigation. (*Id.*) Plaintiff was repeatedly told to drop the issue or he would be found dead.

(*Id.*) Although Plaintiff reported this to Defendant Inspector Copps, Plaintiff alleges that Defendant Inspector Copps did not conduct an impartial investigation. (*Id.*)

Plaintiff eventually declared a mental health emergency, resulting in placement in an S.O.S. cell for three weeks. (*Id.*)[2]  When released from the S.O.S. cell, other officers threatened him. (*Id.*)  Plaintiff then declared another psychological emergency on July 15, 2014. (*Id.*)

Plaintiff was released from the psych cell on July 17, 2014, and was directed to the captain's office where he was told he would be placed in confinement during investigation. (*Id.*) After he was released from confinement in September, institutional staff continued to harass Plaintiff . (*Id.* at 10.)  For example, staff called Plaintiff "the nutcracker" and made Plaintiff stand facing walls to humiliate him and make him suicidal. (*Id.*)

At some point while Plaintiff was in confinement, Defendant Mrs.Copps told Plaintiff to "cut out the foolishness, you wanna make it out of confinement alive. You better stop writing these crazy grievances about my officers, I'm telling you to chill out and I'll get you out." (*Id.* at 11.)  Then,

---

[2] It is unclear what Plaintiff is referring to when he references an "S.O.S. cell" in his amended complaint.

when Plaintiff was released from confinement, Defendant Mrs. Copps told Plaintiff "I kept my word you know who my husband is Mr. Copps, so leave this assault business alone. Stop writing grievances cause they're not going anywhere except right back to the ones you snitching on, and we are all one big happy family. So you can't do nothing but get more hurt." (*Id.*) Defendant Shula also told Plaintiff, "Yeah, you gonna stop gunning these white women boy cause if you get pissed again I'll have more than just your[] nuts stomped out now g[e]t." (*Id.*)

Plaintiff further alleges that after he filed his § 1983 complaint in November 2014, Defendant Inspector Copps and Defendant Mrs. Copps tried to intimidate Plaintiff into removing the grievances and withdrawing his complaint. (*Id.* at 11.)

During this same time period, Defendant Mann allegedly placed a weapon in Plaintiff's cell after Plaintiff refused to stop pursuing his complaint. (*Id.*) Defendant Mann promised to get Plaintiff unless he dropped everything. (*Id.*) Defendant Mann also removed Plaintiff from his cell on January 1, 2015, threatening violence if Plaintiff did not drop the assault issue. (*Id.*)

## B.    Grievances

Plaintiff alleges, generally, that he filed grievances with the Warden and the Secretary of the Department of Corrections, all of which were denied. (*Id.* at 10.) However, Plaintiff contradicts himself by also alleging that his grievances were intercepted and discarded. (*Id.* at 2.)

Plaintiff admits that he initially delayed filing a grievance because of Defendants' treats.  But, Plaintiff eventually file a formal grievance on July 6, 2014.  His formal grievance was refused because he did not attach an informal institutional response as required by the grievance procedure. Plaintiff was under the impression that he had a valid reason to bypass the normal grievance procedure because his life had been threatened. Nonetheless, Plaintiff then filed an informal grievance on August 24, 2014. Plaintiff claims that afterwards, he continued to file grievances, which were allegedly intercepted and discarded by staff.

Eventually, Plaintiff learned that one of his grievances had been received and forwarded to the Attorney General.  There was no progress after 90 days, so Plaintiff filed his § 1983 complaint.

Plaintiff says that he has been subjected to cruel and unusual punishment, excessive force, and deliberate indifference to serious

medical needs in violation of his Fourth, Fifth, Eighth, and Fourteenth

Amendment rights.  He also claims that his Fourteenth Amendment due

process rights were violated. Finally, Plaintiff says that he was subjected to

racial discrimination in violation of the Fourth Amendment.  For relief,

Plaintiff requests compensatory and punitive damages.

## II.  Defendants' Motion to Dismiss

Defendants argue that Plaintiff's amended complaint should be

dismissed because Plaintiff failed to exhaust his administrative remedies

prior to filing his amended complaint as required by the Prison Litigation

Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 47.)

In support, Defendants provided a copy of Plaintiff's informal

grievance and the response regarding the February 2014 assault, and

Plaintiff's request for administrative appeal and the appeal response

regarding the February 2014 assault. (ECF No. 47-1.)  Defendants also

attached a copy of the Office of the Inspector General's Investigative

Report. (ECF No. 47-2.) Defendants further included a sworn declaration of

Shirley Johnson, an operations analyst at the Florida Department of

Corrections ("FDOC"), Bureau of Inmate Grievance Appeals. (ECF No. 47-

3.)  Finally, Defendants provided copies of various other grievances that

Plaintiff had filed. (ECF No. 47-4.)

A review of all institutional grievances filed by Plaintiff from January 2014 through November 2014 discloses that Plaintiff filed grievances regarding: disciplinary reports and appeals, property issues, the number of open windows in the medicine line, the lack of toothbrushes, and various food and dietary complaints during that time period. (ECF No. 47-4.)

Plaintiff also filed an informal emergency grievance on July 6, 2014 regarding the February 2014 assault. (ECF No. 47-1 at 1, 47-4 at 9.) His complaint was referred to the Office of the Inspector General for appropriate action, which rendered his appeal approved. (ECF No. 47-1 at 2, ECF No. 47-4 at 10.)

Then, on August 24, 2014, Plaintiff filed another informal grievance, in which he stated that he was still getting threats and feared for his life because he was still confined where he had been assaulted. (*Id.* at 13.) His complaint was referred to the Office of the Inspector General for appropriate action, which again rendered his appeal approved. (*Id.* at 14.)

Plaintiff filed a third informal grievance on September 22, 2014, stating that he had been assaulted three times by staff but no one had done anything and he was still receiving threats. (*Id.* at 16.) His informal

grievance was returned without action because his allegations were

already reported to the Office of the Inspector General for investigation.

(*Id.*)

In her sworn affidavit Ms. Johnson avers that a review of the FDOC's

Central Office grievance records reveal that the Bureau of Inmate

Grievance Appeals did not receive any grievances from Plaintiff between

January 2014 and November 2014. (ECF No. 47-3 at 1.) Plaintiff did,

however, submit an appeal to the Central Office on December 3, 2014.

(ECF No. 47-1 at 3.)  His appeal was a continuance from his July 2014

grievance regarding the February 2014 assault. (*Id.*) The appeal stated:

> This is a continue from my last grievance I wrote back in July.
> 'Back in the month of February 2014, I was assaulted by two
> staff members in confinement. D[ue] to the injury, I went to
> outside hospital twice.' Memorial hospital in Jacksonville Fla.
> Remove one of my testic[le] because of the injury. After I was
> re[leased], I was sent to RMC, for 3 months on medical hold. I
> did report the abuse while I was there. However I was sent
> back to Northwest Florida Reception Center 'main unit' where
> the assault took place. I wrote a grievance and explain[ed] by
> situation, also I receive[d] more threats by one of the officer[s]
> that assaulted me. Nothing happen[ed]. I was assaulted again
> and went 'Decl[]ared a mental health emergency July 15 2014.
> I told my mental health counselor what happen[ed], she wrote
> an [i]ncident report on July '17' 2014. I was place[d] in
> confinement under investigation. I did two months and two
> weeks, no one never come to interview me, nor said anything
> about the abuse. I was releas[ed] from confinement [at] the end

of Sept. 2014. I was still receiving threats. I again wrote the inspector and nothing was done. To this day no one has[] seen me yet to even know who assaulted me, which was Officer 'May' which got fire[d] for assaulting an inmate and Sgt. Gofton or Gofner which is still at the institution. I am located at the Annex now. The institution level refuse[d] to do anything about it, allowing me to sit in confinement for two months without even interviewing me or asking who assaulted me.

(*Id.*) The Central Office returned his administrative appeal without action on December 17, 2014, for failure to follow the Inmate Grievance Procedure. (*Id.*) Plaintiff either did not submit his appeal at the appropriate institutional level or did not provide the Central Office with a copy of that appeal, nor did he provide a valid or acceptable reason for not following the rules.

Defendants argue that Plaintiff never filed any grievances regarding the alleged January 2014 assault. Thus, they contend that the January 2014 assault was not properly exhausted.

Regarding the February 2014 assault, Defendants also assert that Plaintiff did not properly exhaust his administrative remedies. Defendants point out that Plaintiff went ahead and filed an administrative appeal in December 2014 even though his July 6, 2014 informal grievance had previously been referred to the Office of the Inspector. Because his administrative appeal was then returned without action and Plaintiff was

instructed to contact the Inspector General or re-file a grievance appeal,
Defendants contend that Plaintiff did not properly exhaust his remedies.
And considering Plaintiff already had filed his civil rights complaint on
November 11, 2014, Defendants assert that Plaintiff did not properly
exhaust the February 2014 assault before initiating his § 1983 action.

In response, Plaintiff concedes that he did not bring up the January
2014 assault in his July 6, 2014 grievance. (ECF No. 55 at 2.) Plaintiff
claims, generally, that he was forced to be quiet and that he did not want to
lose his life over filing grievances.

Plaintiff also asserts, however, that after his administrative appeal
was returned, instructing him to contact the Inspector General, he wrote a
grievance to the Inspector General's Office. Plaintiff  points to his August
24, 2014 and September 23, 2014 informal grievances, asserting that they
are evidence of his attempt to file grievances before bringing suit. Plaintiff
also says that the documents Defendants provided to not include all of his
attempted grievances. According to Plaintiff, he was not receiving any
responses to his grievances. Consequently, Plaintiff says that eventually
he stopped filing grievances because Defendant Mrs. Copps and
Defendant Shula allegedly instructed Plaintiff to stop filing grievances.

## III.  Discussion

The PLRA requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue v. Pearson,* No. CV410-240, 2011 U.S. Dist. LEXIS 66950, at *2-3 (S.D. Ga. 2011) (citing *Harris v. Garner,* 190 F.3d 1279, 1285-86 (11th Cir. 2005)). Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *Jones v. Bock,* 549 U.S. 199, 211 (2002).

Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

To exhaust administrative remedies in Florida, a prisoner in FDOC custody must complete the administrative review process established under regulations promulgated by the Secretary of the FDOC. Fla. Stat. Ann. § 944.09(1)(d) ("The department has authority to adopt rules ... to implement its statutory authority. The rules must include rules relating to ... [g]rievance procedures which shall conform to 42 U.S.C. § 1997e."). Under the administrative review process established by the Secretary of the FDOC, a prisoner must: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Secretary of the FDOC. *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code Ann. §§ 33-103.001-103.019*). Once a prisoner has completed this process, he has properly exhausted his administrative remedies. *Id.*

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008.)  Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits

and the parties have a sufficient opportunity to develop the record."

*Singleton v. Dep't of Corrections*, 323 F. App'x 783, 785 (11th Cir. 2009).

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *Whatley v. Warden*, ___ F.3d ___, 2015 WL 5568465, at *5 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the exhaustion determination on [plaintiff's] view of facts;" appellate review of results of first step is *de novo*). If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 2015 WL 5568465, at *6 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second Turner step;

such findings are subject to review on appeal for clear error).[3]

Turner also established, however, that an inmate is not required to grieve a "breakdown in the grievance process" because the PLRA only requires that a prisoner exhaust his "available administrative remedies." Id. at 1083-84 ("[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate."). In the context of retaliation or threatened retaliation, the Turner court concluded:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

Id. at 1085.   To successfully excuse a failure to exhaust, courts have generally concluded an inmate must allege more than just threats of

---

[3] In Whatley, the Eleventh Circuit reversed the dismissal of a complaint for failure to exhaust because the record did not reflect whether the district court dismissed the case on the first or second step of Turner, and thus, the Court could not evaluate whether the district court's conclusions should be reviewed under the de novo standard of the first Turner step or the "clear error" standard of the second Turner step. 2015 WL 5568465, at *6.

retaliation, but instead must allege both threats of retaliation as well as the use of physical force against the inmate in response to the filing of grievances. *See*, *e.g.*, *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (noting that if inmate was assaulted and threatened to keep him from complaining, exhaustion should be excused); *Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006) (exhaustion could be excused where prisoner was threatened with beating for filing grievances and threat was carried out). "Once a defendant proves that a plaintiff failed to exhaust . . . the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials." *Tuckel v. Grover*, 660 F.3d 1249, 1255 (10th Cir. 2011).

Applying the requisite *Turner* analysis, the factual allegations regarding Plaintiff's grievances in Defendants' motion to dismiss do not conflict with Plaintiff's response. Thus, the Court must determine whether, Defendants are entitled to dismissal based on failure to exhaust administrative remedies.

There are three relevant grievances in this case. Only grievances and appeals that are filed before a plaintiff initially files his complaint in federal court are sufficient to satisfy the exhaustion requirement. *See*

*McDaniel v. Crosby*, 194 F. App'x 610, 613 (11th Cir. 2006) ("To the extent

McDaniel relies upon the grievances and appeals he submitted after filing

his initial complaint, such grievances and appeals cannot be used to

support his claim that he exhausted his administrative remedies, because

satisfaction of the exhaustion requirement was a precondition to the filing

of his suit, and thus, must have occurred before the suit was filed.").

Plaintiff filed three grievances before he filed his original complaint in

federal court.  Although Plaintiff filed an amended complaint on August 17,

2015, the relevant date for exhaustion is the date of Plaintiff's initial

complaint. Consequently, Plaintiff's July 6, 2014 informal emergency

grievance, the August 24, 2014 informal grievance, and the September 22,

2014 informal grievance are the operative grievances for determining

whether Plaintiff exhausted his administrative remedies as required by the

PLRA.[4]

---

[4] Although Plaintiff attached various exhibits to his reply, none are relevant to the issue of whether Plaintiff exhausted administrative remedies prior to filing suit. One informal grievance filed on December 14, 2014, refers to an earlier assault that took place in the main unit. (ECF No. 55 at 6.) Another informal grievance filed on March 16, 2015, complains that Plaintiff's grievances are not being answered. (*Id.* at 7.) A formal grievance filed on March 8, 2015 refers to the institution allegedly holding onto grievances until the time expires to appeal to the central level. (*Id.* at 10.) None of these are sufficient to demonstrate exhaustion prior to filing suit because they were all filed *after* Plaintiff filed suit on November 12, 2014. Plaintiff also provides a copy of another informal grievance filed on January 7, 2015, in which he alleges that staff refused a

## A.    The January 2014 Assault

Plaintiff failed to properly exhaust his administrative remedies regarding the January 2014 assault.  None of the three grievances that Plaintiff filed before he filed his complaint in federal court refer to the January 2014 assault.  Although Plaintiff states in the September 22, 2014 informal grievance: "I've been assaulted three times by staff," Plaintiff does not clearly identify the three assaults, when they took place, or any other circumstances surrounding the referenced assaults.

The purpose of administrative exhaustion is to put the administrative authority on notice of the issues in contention and allow the authority an opportunity to investigate those issues. *Chandler*, 379 F.3d at 1287. "Section 1997e(a) requires a prisoner to exhaust all 'available' administrative remedies, and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has . . . ." *Brown v. Sikes*, 212 F.3d 1205, 1207–08 (11th Cir. 2000). Plaintiff's general reference to being assaulted three times does not provide sufficient information for prison officials to

---

mental health emergency and threatened him. (*Id.* at 8.) Not only was this grievance filed after Plaintiff filed suit, it also has no apparent relation to the alleged January 2014 and February 2014 assaults. Thus, it cannot demonstrate sufficient exhaustion.

investigate the January 2014 assault.

Additionally, Plaintiff's three grievances do not include any report of a general lack of protection resulting in ongoing assaults. A prisoner is not expected to file a new grievance about a continued lack of protection each time he is assaulted. *See Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) ("Johnson could not have been expected to file a new grievance . . . each time he was assaulted . . . for the entire period during which he remained unprotected in the general population. Persuasive authority holds that, in such circumstances, prisoners need not continue to file grievances about the same issue.").  In this case, however, the January 6, 2014 grievance clearly relates specifically to the February 2014 assault as opposed to a general lack of protection and ongoing assaults by staff members.  Similarly, the August 24, 2014 grievance concerns Plaintiff's complaint that no one has seen him about his previous complaints and about his complaints of ongoing threats. There is no mention about a general ongoing lack of protection.

While the September 22, 2104 informal grievance arguably may suggest a general lack of protection resulting in various assaults, including the January 2014 assault, it was returned without action on September 25,

2014. Plaintiff did not follow the formal grievance procedure after it was

returned without action.  He did not proceed to file a formal grievance or

file a subsequent appeal to the Office of the Secretary. Accordingly, the

Court concludes that Plaintiff did not properly exhaust administrative

remedies with regard to the January 2014 assault.

Although Plaintiff suggests that he was threatened for filing

grievances, Plaintiff does not satisfy the standards in *Turner* sufficient to

demonstrate that the remedy was unavailable and, therefore, sufficient to

excuse his failure to exhaust administrative remedies for the January 2014

assault.  "A remedy has to be available before it must be exhausted, and to

be 'available' a remedy must be 'capable of use for the accomplishment of

its purpose.'" *Turner*, 541 F.3d at 1084 (quoting *Goebert v. Lee Cnty.*, 510

F.3d 1312, 1322–23 (11th Cir. 2007)).

> One of the purposes of administrative remedies is to give
> prisoners a way of attempting to improve prison conditions
> without having to file a lawsuit. . . . . That purpose is thwarted if
> the prisoner is told that lodging a grievance will result in his
> overall condition becoming worse instead of better. Where cost
> outweighs benefit a rational decision maker will forego the
> benefit. When an inmate forgoes administrative remedies
> because prison officials have made it irrational for him to
> pursue them, the inmate loses a benefit that congress intended
> to bestow on him. The corrections and judicial systems also
> lose the substantial benefits that administrative remedies were

intended to provide them.

*Id.* at 1084–85 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). *Turner* requires that (1) the threats actually deterred Plaintiff from filing grievances, and (2) the threats were threats that would deter a reasonable inmate from filing grievances. *Id.* at 1085.

The record demonstrates that the alleged threats did not deter Plaintiff from filing grievances. After the alleged January 2014 assault, Plaintiff filed three informal grievances related to the February 2014 assault and subsequent threats before he filed his complaint. Plaintiff then also filed his appeal related to the February 2014 assault and subsequent threats on December 4, 2014, after he filed his complaint. (ECF No. 47-1 at 3.) Plaintiff also later sent an inmate request to the Inspector General's Office on December 14, 2014 in reference to the assault. (ECF No. 55 at 6.) Plaintiff also filed various other grievances from April 2014 through March 2015.

Plaintiff's consistent pattern of filing grievances demonstrates that he was not actually deterred from filing grievances. *See Schlicher v. Fla. Dep't of Corrections*, 399 F. App'x 538, 539 (11th Cir. 2010) (affirming dismissal for failure to exhaust where plaintiff argued that prison officials prevented

him from filing grievances through threats, but nonetheless still filed several insufficient grievances); *Ealy v. Geo Group, Inc.*, No. 5:12-cv-00205-MP-CJK, 2014 WL 4437636, at *16 (N.D. Fla. Sept. 5, 2014) (plaintiff failed to exhaust where he claims he was threatened not to file grievances but filed fourteen grievances after the alleged assaults).

Because *Turner* requires a litigant to satisfy both prongs of the test to excuse exhaustion the Court does not need to consider the second prong of the test in view of the Court's conclusion that Plaintiff has failed to satisfy the first prong of the test.  See *Turner*  541 F.3d at 1085 (under first prong, the threats must have actually deterred a plaintiff from filing grievances, and under second prong the threats must have been ones that would deter a reasonable inmate from filing grievances).

Accordingly, the Court concludes that the administrative remedy was not "unavailable" to Plaintiff and, therefore, he is not excused from the PLRA's exhaustion requirement for the January 2014 assault.  Plaintiff's claims with respect to the alleged January 2014 assault should be dismissed for failure to exhaust.

## B.    The February 2014 Assault

Plaintiff's July 6, 2014 informal emergency grievance exhausted his

administrative remedies with respect to the February 2014 assault.

The purpose of the exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 548 U.S. at 93. The exhaustion requirement also promotes efficiency. *Id.* at 89.

Prison officials had time and an opportunity to address Plaintiff's complaints before Plaintiff initiated his federal case. Plaintiff's July 6, 2014 emergency informal grievance specifically refers to an assault by staff in "Feb - 2014," which resulted in two hospital visits for testicular injury. (ECF No. 47-1 at 1.) The informal emergency grievance also references threats that "it isn't over with," and that staff told someone in confinement if Plaintiff goes back to confinement for anything to "hook [Plaintiff] up and spread the word." (*Id.*) Plaintiff's informal grievance informed officials that he does not feel safe "on pound or confinement." (*Id.*)

On July 7, 2014, Correctional Officer S. Rightenburg responded to the grievance, by writing on the informal grievance that Plaintiff's grievance is "Approved," and also circling the word "Approved." (*Id.*)  In an attached response, Officer Rightenburg wrote:

Your informal grievance has been reviewed and evaluated. The

issue of your complaint has been referred to the Office of the Inspector General for appropriate action. Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling. This may or may not result in a personal interview with you. *As action has been initiated, you may consider your appeal approved from that standpoint.* This does not constitute substantiation of your allegations. Approved.

(*Id.* at 2) (emphasis added).

Even though Plaintiff did not file a formal grievance or appeal directly to the Office of the Secretary before he filed his complaint, prison officials were clearly on notice of the February 2014 assault. Plaintiff's emergency informal grievance also provided sufficient information to alert officials of his complaint. It was apparent from the emergency informal grievance that Plaintiff wanted prison officials to investigate the assault and threats. Not only was Plaintiff's emergency informal grievance referred to the Office of the Inspector General for investigation, in a subsequent response to Plaintiff's August 24, 2014 informal grievance in which Plaintiff advised of continued threats and that he was afraid for his life, Officer Rightenburg again informed Plaintiff "[t]he issue of your complaint has been referred to the Office of the Inspector General for appropriate action. . . . . *As action has been initiated, you may consider your appeal approved from that*

*standpoint*. . . . . Approved." (ECF No. 47-4 at 13–14) (emphasis added).

Plaintiff's July 6, 2014 emergency informal grievance, therefore, was

sufficient to alert prison officials to a problem, and the response to

Plaintiff's August 24, 2014 informal grievance confirmed that prison officials

were aware of the issue.

Moreover, Plaintiff was entitled to rely upon Officer Rightenburg's two

responses, informing Plaintiff that action had been initiated and that

Plaintiff may consider his appeal approved from that standpoint. If the

inmate's issue is not resolved at the institutional level, he must file an

appeal to the Office of the Secretary. *See* Fla. Admin. Code 33-

103.011(1)(a).  However, "[W]hen there is no possibility of any further

relief, the prisoner's duty to exhaust available administrative remedies is

complete." *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir.

2004), *abrogated on other grounds by Jones v. Bock*, 365 F.3d 1181

(2007); *see also Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) ("[A]

prisoner need not press on to exhaust further levels of review once he has

either received all 'available' remedies at an intermediate level of review or

been reliably informed by an administrator that no remedies are

available.").

Plaintiff wanted prison officials to do something about the assaults and subsequent threats of future harm. Prison officials told Plaintiff twice that prison officials had turned the matter over to the Inspector General for investigation and that Plaintiff's appeal was "approved" from that standpoint. This is more than sufficient to fulfill the purpose of exhaustion. *See Espinal v. Young*, No. 4:13cv116-RH/CAS, 2015 WL 5353005, at *2–5 (N.D. Fla. Aug. 19, 2015) (complaint referred to the Office of the Inspector General and response to grievance appeal stating "[a]s action has been initiated, you may consider your appeal approved from that standpoint," constituted proper exhaustion because department could investigate the attack and evaluate the officers' actions);[5] *Lanier v. Smith*, No. 3:08-cv-

_____

[5] Although the grievance appeal in *Espinal* was an appeal to the Office of the Secretary, and here, the grievance was an emergency informal grievance, *Espinal* is nonetheless instructive on the issue. The response to Plaintiff's emergency informal grievance contained the exact language as that in the *Espinal* grievance appeal response: "As action has been initiated, you may consider your appeal approved from that standpoint." (ECF No. 47-1 at 1); *Espinal*, 2015 WL 5353005, at * 3. *The Espinal* court reasoned that the plaintiff's grievance appeals "were sufficient for the Department to investigate the attack, consider the argument that Mr. Espinal should not have been housed in confinement with a "DC status" inmate, and evaluate the actions of the officers who rendered assistance after and during the attack. The purpose of exhaustion was fulfilled." *Id.* at *5. The same reasoning applies here. Plaintiff's informal grievance that was referred to the Office of the Inspector General was sufficient for the Department to investigate the alleged attacks and subsequent threats and evaluate Defendants' actions. Moreover, as previously discussed, Plaintiff was told that he could consider his *appeal*—not his informal grievance—approved and Plaintiff was entitled to rely on that.

833-J-12JRK, 2009 WL 1758904, at *1 (M.D. Fla. June 19, 2009) (denying defendants' motion to dismiss for failure to exhaust where plaintiff was informed three times that the matter had been referred to the Inspector General's Office for review and consideration). Plaintiff was successful at the first stage of the grievance procedure and was not required to pursue subsequent stages. *See Ross*, 365 F.3d at 1187 (inmate was not required to file a formal grievance at the second step of detention center's grievance process because he was successful at the first stage of the grievance process and nothing suggests there was any further relief available through detention center's grievance procedure).

Defendants rely on *Fogle v. Landrum*, No. 2:06-cv-278-Ftm-259DNF, 2007 WL 1831791, at *3 (M.D. Fla. June 25, 2007), in support of their argument that Plaintiff was required to continue appealing even though his complaint had been referred to the Office of the Inspector General. The court in *Fogle* held that the plaintiff did not exhaust his administrative remedies because he did not file an appeal to the Office of the Secretary. 2007 WL 1831791, at *3. There, the plaintiff did not file an appeal after waiting for the outcome from the Office of the Inspector General because an appeal would have been untimely. *Id.*

The instant case, however, is different. Here, Plaintiff was explicitly told twice that his issue had been referred to the Office of the Inspector General for appropriate action, that action had been initiated, and that Plaintiff could consider his appeal approved from that standpoint.[6] Additionally, unlike *Fogle*, nothing suggests that Plaintiff declined to file an appeal simply because he thought it would be untimely after waiting for the outcome of the Inspector General. Plaintiff already had received the remedy he wanted—investigation—and he was not required to continue appealing his grievance.

Defendants further argue that because "the grievance process was

---

[6] The instant situation is also distinct from that in *Hope v. Walker*, No. 5:13cv362/WS/CJK, 2015 WL 5190435, at *1 (N.D. Fla. Aug. 18, 2015). There, the warden responded to the plaintiff's grievance, informing the plaintiff that his allegation of staff abuse was reported to the Inspector General's Office for further investigation, but that his grievance was denied. *Id.* at *4. The response went on to inform the plaintiff of the availability of further review by filing an administrative appeal. *Id.* The plaintiff, however, did not file an appeal as instructed because he intended his original grievance to be an appeal and also because he believed that the grievances were futile since they were always denied. *Id.* at *4–5. Accordingly, the court determined that the referral of the plaintiff's allegations to the Inspector General's Office did not eliminate the exhaustion requirement. *Id.* at *5. Here, however, the response to Plaintiff's July 6, 2014 emergency informal grievance explicitly stated that his grievance was approved. The response here also did not instruct Plaintiff of the availability of further review by filing an administrative appeal. In fact, the response to Plaintiff's September 22, 2014 informal grievance confirms that Plaintiff should not file any additional grievances or appeals. Not only was it returned without action, but it also stated, "[y]our allegations have already been reported to the Inspector General's Office. They are investigating be patient."

voluntarily continued and not completed prior to Mr. Luckey filing suit, his allegations concerning the alleged assaults cannot be deemed exhausted prior to him filing suit." (ECF No. 47 at 4.)  While it may be *advisable* for an inmate to appeal to the highest level to avoid any question as to whether he exhausted his administrative remedies, the inmate is not *required* to continue to appeal once relief is no longer "available." *Brown*, 422 F.3d at 935 n.10. It is unclear what further relief Defendants believe Plaintiff could have obtained by appealing to the Office of the Secretary. Plaintiff wanted someone to investigate the February 2014 assault and subsequent threats and he wanted to inform prison officials that he did not feel safe. Prison officials provided this remedy by referring the case to the Office of the Inspector General for investigation. While it might have been *advisable* for Plaintiff to file an appeal prior to filing his complaint in federal court, further relief was not available and, therefore, Plaintiff was not *required* to continue his appeal.  And although Plaintiff continued filing grievances, including an appeal to the Office of the Secretary after he filed his federal complaint, Plaintiff did so because he had not heard anything further about the investigation. Plaintiff's appeal to the Office of the Secretary after he filed his complaint in federal court does not somehow un-ring the bell.

Accordingly, the Court concludes that Defendants' motion to dismiss for

failure to exhaust with respect to the February 2014 assault should be

denied.

## IV.  Recommendation

For the foregoing reasons it is respectfully **RECOMMENDED** that

Defendants' Motion to Dismiss, ECF No. 47, should be **DENIED** and

Plaintiff should be permitted to proceed with his claims related to the

February 2014 assault.

**IN CHAMBERS**  this 17th day of February, 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**